IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

v.                                                             CIV 04-231 BB/KBM
                                                                  CR  98-976 BB

ANTONIO J. LOPEZ,

    Defendant-Movant.

# **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

       This matter is before the Court on the motion seeking habeas relief under 28 U.S.C. § 2255 filed by Antonio Lopez ("Petitioner").  The entire transcript of the criminal trial and sentencing before the Honorable C. LeRoy Hansen has been thoroughly read, as have the pleadings and materials submitted in this case.  *See Docs.* 1-2, 5-6; s*ee also United States v. Almaraz, et al.,* CR 98-876 BB (Trial/Sentencing Transcript, Vols. 1-6, 735, 737) (hereinafter "*Transcript*").  Having considered the arguments and relevant law, I find the petition is not well-taken and recommend that it be denied.  Because it is possible to resolve the issues on the pleadings, and the record establishes conclusively that Lopez is not entitled to relief, I find that an evidentiary hearing is not necessary.  *E.g., § 2255;* Rule 8(a), *Rules Governing Habeas Corpus Under Section 2255; Trice v. Ward,* 196 F.3d 1151, 1159 (10th Cir. 1999), *cert. denied,* 531 U.S. 835 (2000).

## **I.  Factual & Procedural Background**

       Lopez was charged with two counts of possession with intent to distribute cocaine and

one count of conspiracy to distribute cocaine. The Tenth Circuit discussed the background evidence in great detail, and the United States does so in some detail in its Response. I refer the reader to those sources. *See United States v. Lopez,* 49 Fed. Appx. 875 (10th Cir. 2002), *cert. denied,* 537 U.S. 1239 (2003); *Doc. 5* at 2-8. For the purposes of resolution of the matter before me, a rather simplistic version of the factual background will suffice.

After a lengthy investigation involving a series of undercover drug purchases and negotiations for future purchases, ultimately the United States brought charges against seven defendants. The United States alleged that defendants were participants in the conspiracy and responsible for multi-kilogram quantities over the course of the investigation.

Lopez was involved for a only a very short time, in part because he became incarcerated on unrelated state criminal charges. On the conspiracy charge, Lopez and other co-defendants argued that negotiations to which they were not a party relating to five-kilograms of cocaine should not be attributable to them. *See e.g., Lopez,* 49 Fed. Appx. at 786-87; *Transcript* at 111, 735, 737; *Doc. 6* at 5. From the outset, however, Lopez was willing to admit to two possession charges amounting to two ounces and one kilogram of cocaine, respectively. Although he was willing to plead guilty to those charges, the defendants and the prosecutor could not reach an agreement. Accordingly, Lopez went to trial with four other defendants, each of whom was represented by a different attorney.

Collectively, the five defense attorneys employed a trial strategy designed to portray the government's investigation as a vast expenditure of resources that yielded little more than a molehill of evidence. In essence, the defendants accused the government of making a mountain out of it by charging defendants with conspiracy based on quantities that never materialized and

which the targets could not deliver. In a much more artful fashion, Defense counsel argued that while the paid informant benefitted handsomely, the investigation snared only minnows rather than netting any big fish. In addition, Lopez's attorney sought to focus the jury's attention on Lopez's alleged lack of involvement with the five-kilogram negotiation. *See, e.g., Transcript* at 100, 103, 104, 111, 671-73, 679-680, 686, 692, 694, 704-09.

After the jury convicted Lopez on all counts, trial counsel and Lopez urged the court to disregard the five-kilogram quantity attributed to him because he was not present at the negotiation and the person who mentioned the five-kilogram amount was merely "puffing" about his ability to deliver such a large amount. *See id.* at 729, 735-37. Judge Hansen declined to disregard the amount but did sentence Lopez to the lowest end of the applicable guideline range. *See id.* at 743.

The Federal Public Defender thereafter represented Lopez on appeal. The Tenth Circuit affirmed both his conviction and sentence after rejecting the various claims he raised there. *See Lopez,* 49 Fed. Appx. at 876, 883. Lopez related to appellate counsel his alleged basis for an ineffective assistance of counsel claim, but she advised that those claims should be brought in a habeas proceeding. *See Doc. 2,* Exh. B. Accordingly, after the Supreme Court denied certiorari, Lopez timely filed his *pro se* § 2255 habeas petition. His sole ground for relief is ineffective assistance of counsel. *See Docs. 1-2.*

## II. Analysis

The two-prong test announced in *Strickland v. Washington,* 466 U.S. 668 (1984) governs ineffectiveness claims. Lopez must show that his attorney's representation was "objectively unreasonable" and that this deficient representation resulted in "prejudice." *See, e.g., Wiggins v.*

3

*Smith*, 539 U.S. 510, ___, 123 S. Ct. 2535-36 (2003). An ineffective assistance of counsel claim fails if either of the *Strickland* prongs are not met. It is entirely appropriate for a habeas court to analyze the prejudice prong first and exclusively, if that is the easier course. *E.g., Scoggin v. Kaiser,* 186 F.3d 1203, 1207 (10th Cir.), *cert. denied,* 528 U.S. 953 (1999); *Cooks v. Ward,* 165 F.3d 1283, 1292-93 (10th Cir. 1998), *cert. denied,* 528 U.S. 834 (1999).

Lopez alleges that his trial attorney used cocaine while engaged in the legal representation of Petitioner. Indeed, it is uncontested that trial counsel was subsequently arrested on drug charges and convicted on one felony count involving cocaine. Lopez contends that his attorney was a "drug addict" and therefore "conflicted" in representing someone charged with a drug crime. *See Doc. 1* at 6; *Doc. 2* at 5, 10; *Doc. 6.* Although I have not found a case in the Supreme Court or the Tenth Circuit that confronts an ineffectiveness claim in the context of an attorney's drug or alcohol use, other federal courts are in accord that mere use and/or addiction does not conclusively establish an ineffectiveness claim. Rather, consistent with *Strickland,* these courts hold a petitioner must show that his attorney's performance was deficient and that he was actually prejudiced thereby.[1]

Because this approach is consistent with the most recent Supreme Court discussion on analysis of ineffectiveness claims, and because the claim of ineffectiveness here deals with

---

[1] *See e.g., Frye v. Lee,* 235 F.3d 897 (4th Cir. 2000), *cert. denied,* 533 U.S. 960 (2001); *Berry v. King,* 765 F.2d 451 (5th Cir. 1985), *cert. denied,* 476 U.S. 1164 (1986); *Young v. Zant,* 727 F.2d 1489, 1493 (11th Cir. 1984), *cert. denied,* 470 U.S. 1009 (1985); *Fowler v. Parratt,* 682 F.2d 746, 750 (8th Cir. 1982); *see also e.g., United States v. Walker,* 2000 WL 353518 (6th Cir. 2000); *United States v. Scaretta,* 1997 WL 165379 (2nd Cir. 1997); *United States v. Germain,* 1996 WL 43578 (4th Cir. 1996); *Jackson v. United States,* 1994 WL 375427 (7th Cir. 1994); *Bonin v. Vasquez,* 794 F. Supp. 957 (C.D. Cal. 1992), *aff'd,* 59 F.3d 815 (9th Cir. 1995), *cert. denied,* 516 U.S. 1051 (1996); *Hernandez v. Wainwright,* 634 F. Supp. 241, 245 (S.D. Fla. 1986), *aff'd,* 813 F.2d 409 (11th Cir. 1987).

4

counsel's conduct during the course of legal proceedings,[2] I am persuaded that the Supreme Court and Tenth Circuit would adopt the same approach. I therefore employ it here.

Lopez's pleadings are quite prolix, but a careful and liberal reading of them reveals that his claim is premised on the single theory that counsel did not undertake any sort of defense.[3] Lopez

---

[2] In most cases, a defendant's claim of ineffective assistance of counsel involves counsel's performance during the course of a ***legal proceeding,*** either at trial or on appeal. . . . In such circumstances, whether we require the defendant to show actual prejudice–a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, . . . or whether we instead presume prejudice turns on the magnitude of the deprivation of the right to effective assistance of counsel. That is because the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial, . . . or a fair appeal . . . . Absent some effect of challenged conduct on the reliability of the . . . process, the [effective counsel] guarantee is generally not implicated. . . .

We normally apply a strong presumption of reliability to ***judicial proceedings*** and require a defendant to overcome that presumption . . . by show[ing] how specific errors of counsel undermined the reliability of the finding of guilt. . . . Thus, in cases involving mere attorney error, we require the defendant to demonstrate that the errors actually had an adverse effect on the defense. . . .

***In some cases, however, the defendant alleges not that counsel made specific errors in the course of representation, but rather that during the judicial proceeding he was – either actually or constructively – denied the assistance of counsel altogether.*** The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage. . . . The same is true on appeal. . . . Under such circumstances, [n]o specific showing of prejudice [is] required, because the adversary process itself [is] presumptively unreliable.

*Roe v. Flores-Ortega,* 528 U.S. 470, 477, 481-82 (2000) (emphasis added) (internal quotations and citations omitted).

[3] Lopez contends, for example, that counsel "stopped working," "failed to give a meaningful and effective defense," *Doc. 1* at 5; "took no meaningful action, nor did he meet with this movant with regards to the possible witnesses to contradict the governments (sic) erroneous dates of sales and other facts," and "never came by to discuss trial strategies, refused my phone calls, and refused to talked to movant (sic)

5

asserts that his attorney's alleged lack of effort arose when Lopez refused to refer him to a source for cocaine. *See, e.g., Doc. 1* at 5; *Doc. 2* at 4-5, *Doc. 6.* Lopez further contends that this failure is evidenced by the fact his attorney refused to interview witnesses whom Lopez suggested, and because counsel played "Solitaire" on his laptop computer during trial. *See, e.g., Doc. 1* at 5; *Doc. 2* at 3, 5-6, 9; *Doc. 6.*

Lopez believes that had Judge Hansen been aware of the computer game, he would have dismissed the charges after declaring a mistrial. *Doc. 2* at 6. He also asserts that he wanted his attorney to interview and call defense witnesses who could attest that Lopez was not available to the conspiracy during the five-kilogram negotiation and that his participation was limited to the relatively two small possession charges. He claims counsel did not call witnesses to present this defense, nor did he cross-examine a government witness on the subject.[4] However, Petitioner's

---

family," *Doc. 2* at 10-11.

[4] Petitioner's most comprehensive discussion of this point is found in his reply:

> At one point in the trial, defense counsel was given an opportunity to cross-examine the case agent. Before [counsel] was given his turn at cross-examination [I] requested [him to] address to the Prosecution's exhibit, (a time and event chart of the investigation), and ask the case agent to point out to the jury the time frame that [I] was involved and witnessed by the agency's surveillance. Then after getting confirmation for the time span [I] was involved that he . . . then ask the case agent if he knew [my] whereabouts before [I] came into view of the investigation and after [I] was no longer seen as being part of "the conspiracy." (Just for clarification [I] was in custody for unrelated reasons.) [I] wanted the jury to be aware of [my] small role in such a short period of time and yet still being charged with involvement of almost a year long investigation, when truly [I] was incarcerated through almost all the investigation. This is what [I] wanted the court and jury to know, but when asked to bring up such issues and question during cross-examination, [counsel] responded to [my] request by saying, "I'd appreciate it if you don't try to tell me how to do my job." [Counsel] never bothered to address these issues and ignored [me] throughout the trial.

6

assertions neither establish deficient conduct nor prejudice under the *Strickland* standard.

The reason Lopez was not "available" for the entire duration of the conspiracy was his admitted incarceration, a topic defense counsel for obvious tactical reasons did not want disclosed to the jury. Also, in direct contradiction to Petitioner's assertion, the record establishes that defense counsel ***did*** in fact question government witnesses to elicit testimony that Lopez wanted him to – that Lopez was present on only two occasions during one week of an alleged year-long conspiracy. *See, e.g., Transcript* at 356-57 (counsel asks agent to look at Government's chart of transactions throughout the conspiracy and identify "how many times does my client's name appear," to which the agent replied "twice"); *id.* at 524 (counsel asks another agent whether Lopez was "part of all this activity prior to the time you met him" eliciting the answer "No. It's just that through the investigation he had been mentioned [by another alleged conspirator as] who would be taking the business over."); *id.* at 524-25 (eliciting responses from witness that he first came into contact with Lopez on September 21st and had his last contact with him on September 28th of the same year and thereafter no further dealings with him). Moreover, although Petitioner mentions no other specific instances of deficient conduct, the United States provides reasons why there were "no appropriate pretrial motions" that could have been filed. I find that discussion persuasive and incorporate that reasoning here. *See Doc. 5* at 10.

Furthermore, Lopez fails to consider counsel's playing "Solitaire" in the context of this particular trial. Five defense attorneys were required to make their presentations in a particular order, with Lopez's attorney going last. Throughout the five-day trial, his attorney therefore had to wait a long time in between opportunities to present his questions and arguments. Indeed, one

---

*Doc. 6* at 4 (grammatical corrections supplied).

time he persuaded the Judge Hansen to let him question the agent first out of order because the witness was "probably the main witness with respect to my client." *Transcript* at 523. As to the remaining witnesses, some of the points his attorney would have wanted to make were already being made or alluded to by the other attorneys while Lopez' counsel waited his turn. This Court certainly does not countenance an attorney playing computer games during trial, but it is small wonder counsel sought something to do to keep himself occupied and alert. I also cannot discount the possibility that any game playing was a theatrical trial tactic, given that defense counsel were pushing the view that the charges were much ado about nothing. Lopez's attorney underscored that sentiment as the last person to make opening statement by saying: "I'll try to say awake during the government's fascinating case. I'm sure you will, too. It involves piles and piles of evidence that they have to bring to trial to justify it." *Id.* at 111-12.

In any event, even if he was playing Solitaire, my review of the record establishes that it did not distract counsel and that his participation and functioning reached the level of counsel guaranteed by the Sixth Amendment throughout the trial. *See, e.g., Bell v. Cone*, 535 U.S. 685, 696-97 (2002) ("When we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete. We said 'if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing.'"). In the present case, Lopez' attorney: participated in voir dire; informed Court that petit jury had not been sworn; made opening statements; cross-examined witnesses or passed on doing so when the witnesses did not present testimony directly relating to Lopez; asked for a curative instruction; moved for a directed verdicts; made closing argument; and participated in discussions about procedural matters after the jury retired. *See, e.g., id.* at 4-6, 24-26, 340, 43-

8

44, 49, 61-62, 65-67, 71, 78, 83, 111-12, 187, 356-57, 370, 396, 428, 469-73, 483-84, 523-32, 592-93, 601-02, 609-10, 618, 643, 703-09, 719-21; *see also id.* at 683 (in his closing argument, another defense attorneys relied on points Lopez's counsel made during trial).

For all of these reasons, I find that counsel's performance was not constitutionally-deficient. Counsel focused on the points Lopez says he wanted counsel to make, but the jury convicted him nonetheless, and that conviction was upheld on appeal. In my view, even if counsel had called defense witnesses to buttress the points he made with the Government's witnesses, and even if he had not played Solitaire during trial, there is no "reasonable probability" that the outcome of the proceeding would have been different. Having reviewed the transcripts, I find that Lopez received a fair trial and my confidence in the outcome is in no way undermined. *E.g., Wiggins,* 539 U.S. at ____, 123 S. Ct. at 2542; *Foster v. Ward,* 182 F.3d 1177, 1185 (10th Cir. 1999), *cert. denied,* 529 U.S. 1027 (2000). Consequently, Lopez fails to establish either prong of the *Strickland* test.

Wherefore,

**IT IS HEREBY RECOMMENDED** that Lopez's § 2255 petition be dismissed with prejudice.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the ten-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE